497 P.2d 1399

**Lester DARRAR, Plaintiff-Respondent,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Defendant-Appellant.**

No. 10890.

Supreme Court of Idaho.

June 1, 1972.

Peter B. Wilson, Wilson & Walter, Bonners Ferry, for defendant-appellant.

Jerrold E. Park, St. Maries, for plaintiff-respondent.

McFADDEN, Justice.

Plaintiff-respondent Lester Darrar brought this action to recover the value of four head of cattle killed between March and August, 1968, by the operation of defendant-appellant railroad company's trains. The theory of recovery of Darrar's complaint was that the railroad company (appellant) was negligent in failing to maintain adequate fences where its right-of-way adjoins his inclosed cattle pasture as required by I.C. § 62–406, thus allowing the cattle to stray onto the tracks. The complaint also sought recovery of twice the value of the cattle killed as provided by I.C. § 62–410[1] because the railroad allegedly failed to maintain a book at a designated station in the county wherein its employees could record the description of any livestock killed by the railroad.

After trial the district court, sitting without a jury, found the location where the cattle were killed to be such an area required to be fenced pursuant to I.C. § 62–406, found the value of the cattle to be $590.00, and found the railroad failed to keep the book required by I.C. § 62–410. The court entered judgment for double the actual damages plus a reasonable attorney's fee as provided by I.C. § 62–409.

In its appeal appellant contends that it was not obligated to maintain a fence at the location in question, that damages for one of the animals was improperly calculated, and also insists the penalty section of the statute (§ 62–410) is inapplicable because the respondent cattle owner received actual notice of the deaths of his livestock. Respondent, in resisting the appeal, has moved for reasonable attorney's fees for his expenses incurred in this court.

The location where the four cattle in question were killed is about four and one-half miles west of the town of Calder near the juncture of Trout Creek and the St. Joe River. The land where the cattle grazed lies generally to the northeast of the St. Joe River. Appellant's right-of-way runs along the north bank of the river. At the times pertinent herein Darrar's cattle grazed on the north side of the river. The four and one-half miles of pasture is approximately divided in ownership between Darrar and one Farrell. By joint agreement the two run their cattle together on this particular ground, although respondent testified his cattle tended to stay in the western portion of the pasture.

At the west end of the pasture there is a fence which runs from the north line to the right-of-way and keeps the cattle from wandering further west. The same situation exists at the east end except the fence is open at the point where a county road cuts through—that road roughly paralleling the railroad right-of-way the entire length of the pasture. Along the northerly edge of the pasture there is no fence but there is mountainous terrain with timber growth. Respondent testified the cattle do not venture through this area.

1. I.C. § 62–410. "Book of descriptions of stock killed.—Every railroad company must keep a book at a principal station in each county into or through which its road runs, to be designated by the company, and a notice of the station so designated must be filed with the recorder of the county in which the station is located; and every such company must cause to be entered in said book, within fifteen days after the killing or maiming of any animal, a description as nearly as may be of such animal, its color, age, marks and brands, and keep said book subject to public inspection. Should any company fail to keep such book, or to file such notice in the manner herein provided, or to enter therein such description of any animal maimed or killed, for a period of fifteen days thereafter, such company is liable to the owner of such animal for twice the value thereof."

The district court found this pasture to be "inclosed" within the meaning of I.C. § 62–406, a conclusion we consider warranted on this record. The record shows that the 200 head of cattle being grazed on this pasture were effectively contained by the fences, the timber growth, and the terrain. Appellant argues that the timber growth is an insufficient barrier to "inclose" the land. The uncontroverted testimony on this point is that while cattle could pass through the timberland area they did not do so. Forage in the timbered area is sparse and apparently the pasture land is sufficiently tempting to hold the cattle. In that there is no indication in the statute that a fence or wall is required, something else which works as a barrier to turn cattle presumably should meet the statutory test of "inclosed."[2] The court found:

"V

"The upland or easterly side of the right-of-way is adjoined by pasture land which is enclosed by fences and/or natural barriers, consisting of timbered mountains through which the cattle will not cross. Therefore, the Railroad in the area in question passes along enclosed lands within the meaning of Idaho Code § 62–406."

This finding of fact is supported by competent and substantial evidence and is only attacked by conjectural arguments. Thus it must be upheld. I.R.C.P. 52(a).

Finding V, *supra*, also goes against appellant's contention that there is no gate or cattle guard closing the gap alone the eastern line where the county road enters the pasture area thus leaving a clear escape path. There is no evidence any cattle actually have strayed from the pasture by this route and then onto the tracks. We note, too, that the cattle involved here were struck several miles from this opening in the eastern fence.

The next issue concerns the existence of a fence adjacent and parallel to the right-of-way. The record is somewhat incomplete, but apparently Farrell, respondent's partner, maintains a fence on his land—the easterly section of the pasture —parallel to the right-of-way. It is undisputed that the appellant railroad maintains a right-of-way fence along the westerly section of the pasture near Trout Creek where the four cattle were struck. Upon conflicting evidence, the district court found appellant's fence was in such poorly maintained condition that cattle were not turned. The existence of this railroad fence and its annual maintenance by the railroad indicates the recognition of the livestock problem along that stretch of track. Nevertheless, because the area was an inclosed field within the statute the railroad was under a duty to properly maintain its right-of-way fence. There was evidence introduced showing the railroad fence near the Trout Creek area was down at the times the four cattle were killed. This fact was sufficient for the district court to have found liability per I.C. § 62–406.

Appellant makes two other contentions which it argues obviate a duty to fence. The map admitted in evidence as plaintiff's exhibit 2 shows several parcels of land in this pasture area, which also lie along the railroad right-of-way, to be owned by third parties. Apparently the cattle freely wander across these parcels as they are not fenced off from the Darrar-Farrell land. While this may be the fact, there is nothing in the record to show the other landowners have objected to this practice. The pasture has been treated as a unit for all practical purposes. The railroad's contention, therefore, is without merit.

There has been considerable argument regarding the effect of the St. Joe River on land belonging to Darrar situated on

2. Black's Law Dictionary (Revised 4th Ed.) defines "inclose" as: "to surround; to encompass; to bound; fence or hem in, on all sides." An "inclosure" is defined as "land surrounded by some visible obstruction."

the southwest side of the river. In the Trout Creek area, on the west bank of the river, Darrar owns land from which he harvests hay and which he contends are cultivated fields adjoining the railroad right-of-way. For purposes of this opinion we do not pass on the question whether or not the river constitutes a barrier between this hay field and the right-of-way so as to make them non-adjoining. The record shows that Darrar's cattle were all on the northeast side of the river and this fact combined with the conclusion the lands on that side of the river were "inclosed" makes further analysis unnecessary.

■ Appellant has assigned error to the finding by the court that a calf killed near Trout Creek on July 23, 1968, was owned by Darrar and had a value of $140. This calf was struck by a passing train and later the carcass was tossed into the river by appellant's employees thus making positive identification and accurate valuation impossible. As far as the question of its ownership, the record does show that only Darrar's cattle were grazing in that location at that time. It is logical to conclude this animal was one from his herd. As to the value placed on the animal, the railroad employee who tossed the carcass into the river filed a report with his employer on which he gave the weight of the animal as being 350–400 pounds. This figure in turn was taken from an estimate rendered by another employee at the scene. Darrar placed a value on the animal using the weight estimated by the employee report. Appellant insists the figure testified to was hearsay. We note, however, that I.C. § 62–410 requires the railroad to keep a written record of the description of cattle killed. In the event the railroad disposes of the carcass, that description would enable its owner to place a value on the dead animal. The employee's report was required by the statute and thus may serve as a basis for placing a value on the ani-

mal. There is no contention the value based on the weight was unfair; therefore there was no error in this regard.

■ The remaining assigned error is the district court's award of double damages for the cattle due to the fact the railroad did not keep a record book as required by I.C. § 62–410. (The record supports the finding by the court that no such book was kept.) The statute is by its terms mandatory. The purpose of the statute is to provide notice to the persons owning livestock so that claims may be quickly settled. The legislature obviously intended the statute to be complied with as it provided for a penalty where the railroad did not keep the proper records. In 1915 this Court in Wilson v. Oregon Short Line RR. Co., 28 Idaho 54, 152 P. 1062, clearly put the railroads on notice that this penalty aspect of the statute would be imposed if the animal owner showed the railroad was otherwise liable for killing his livestock. Liability has been established here under I.C. § 62–406. Therefore the award of double damages is warranted.

■ The remaining question concerns the effect of I.C. § 62–409 [3] on respondent's motion for attorney's fees on appeal. The statute has been held to allow the award of attorney's fees in the trial court. Hindman v. Oregon Short Line RR. Co., 32 Idaho 133, 178 P. 837 (1918), but never construed by this Court as allowing fees on appeal.

This Court recently passed on the question of attorney's fees on appeal in the context of a mechanic's lien foreclosure appeal. Weber v. Eastern Idaho Packing Corp., 94 Idaho 694, 496 P.2d 693 (1972). In that decision the Court interpreted a mechanic's lien statute (I.C. § 45–513) and decided that because of its language the workman could only recover attorney's fees in the trial court. Here the applicable statue does not refer to a specific court or mention trial versus appeal proceedings.

3. I.C. § 62–409. "Recovery of attorneys' fees.—In all suits under section 62–406 if the plaintiff recover any damages he shall also be entitled to recover reasonable attorneys' fees, together with his costs of suit."

The statute, § 62–406, on which respondent bases his claim for recovery has as its underlying purpose the regulation of railroads. Experience has shown that trains in their normal operations in fact cause injury to people, livestock, and other property. These statutes in Chapter 4 of Title 62, I.C., indicate an intent by the legislature to require that railroads bear certain burdens as part of their business operations. The statute indicates an intent to allow injured persons recovery of all their costs related to litigation.

It seems reasonable, then, to conclude that if the legislature provided for recovery of attorney's fees to the successful plaintiff at trial, absent a contrary expression, that plaintiff should not be then put to his own expense upon successful defense of the judgment on an appeal by defendant. Respondent's motion for attorney's fees in the amount of $1,000, is therefore granted.

The judgment of the district court is affirmed; upon remittitur the judgment by the district court shall additionally include $1,000 as attorney's fees on appeal. Costs to respondent.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and HAGAN, District Judge, concur.